UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MALYNDA M. BREWER,

               Plaintiff,                     CIVIL ACTION NO. 10-14039

          v.                        DISTRICT JUDGE ARTHUR J. TARNOW

COMMISSIONER OF               MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

               Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## I. PROCEDURAL HISTORY

### A.    *Proceedings in this Court*

On March 8, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of Disability Insurance and Supplemental Security Income benefits (Dkt. No. 3). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos.12 and 19). Plaintiff also filed a response brief (Tr. 20).

### B.    *Administrative Proceedings*

Plaintiff filed the instant claims on March 6, 2008, alleging that she became unable to work on February 17, 2007 (Tr. 10, 108-10, 113-19). Plaintiff also filed a Title XVI application for

supplemental security income on March 6, 2008.  The claims were initially disapproved by the Commissioner on May 12, 2008 (Tr. 57-58).  Plaintiff requested a hearing and, on January 27, 2010, Plaintiff appeared with counsel via video hearing before Administrative Law Judge (ALJ) Elliott Bunce, who considered the case *de novo*.  In a decision dated March 11, 2010, the ALJ found that Plaintiff was not disabled (Tr. 10-17).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council, on September 9, 2010, denied Plaintiff's request for review (Tr. 1-5).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled.  Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.     STATEMENT OF FACTS

### A.     *ALJ Findings*

Plaintiff was 41 years old at the time of the administrative hearing (Tr. 26).  She has some college level education and worked as an adult foster care provider, a cashier in a retail setting, and a medical receptionist (Tr. 49-50).

The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of February 17, 2007.  At step two, the ALJ found that the Plaintiff had the following severe impairments: sinus tachycardia, diabetes mellitus, obesity, depression, and anxiety (Tr. 12-14) (20 CFR 404.1520(c) and 416.920(c)).  At step three, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the regulations (Tr. 12-14).

- 2 -

Between steps three and four, the ALJ found that Plaintiff has the Residual Functional Capacity (RFC) to perform "work that does not require: exertion above a sedentary level, or more than frequent grasping, or more than simple, routine, repetitive tasks, with one- or two- step instructions, or more than occasional contact with the public, coworkers, or supervisors" (Tr. 14). At step four, the ALJ found that Plaintiff is unable to perform any of her past relevant work given her impairments (Tr. 16). Last, at step five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could perform a significant number of jobs in the national economy, such as inspector (10,000 jobs in the national economy), office clerk (20,000 jobs in the national economy), or surveillance system monitor (22,000 jobs in the national economy) (Tr. 16-17). Thus, the ALJ concluded that Plaintiff was not disabled (Tr.17).

### B.    Administrative Record

#### 1.    Plaintiff's Testimony and Statements

Plaintiff testified that she is the mother of two boys—ages six and twelve at the time of the hearing—and that she performs regular household chores such as laundry, grocery shopping, washing dishes, and sweeping (Tr. 26, 28). Plaintiff indicated that she takes prescription medication for daily pain in her feet, legs, back, hands, and arms, and has been on medication for depression and anxiety for six or seven years (Tr. 29-30). She attributes most of her physical pain to diabetic neuropathy in her feet and legs and carpal tunnel syndrome in her hands

(Tr. 28-29).

Plaintiff further testified that she has difficulty walking (again, because of the diabetic neuropathy), and an inability to walk on a level surface more than 50 feet without needing to stop and rest. (Tr. 38-39). She described being unable to sand longer than five minutes and claimed that she cannot sit for more than 20 minutes without changing positions and standing up (Tr. 39).

- 3 -

Plaintiff testified that she uses a cane on a daily basis since receiving a written prescription from a hospital to address her balancing problems, specifically because she had been "off balance" and "falling a lot" (Tr. 43). Plaintiff spends most of the day off her feet either reclining or lying down due to the pain or problems with sleeping during the night (Tr. 43 and 48).

Plaintiff testified that she has concentration or memory problems on a daily basis and that these problems are particularly aggravated when her blood sugar is out of control (Tr. 41). However, when she takes insulin as prescribed, her blood sugar remains at a controlled level (Tr. 30, 41). Plaintiff also testified to having crying spells "pretty much every day" and that anxiety affects her daily activities, makes her not want to leave the house nor be around people in stores (Tr. 46-47).

### 2.    Medical Evidence

The Court first summarizes the medical evidence concerning Plaintiff's physical impairments related to her diabetic peripheral neuropathy, and then discusses the medical evidence concerning Plaintiff's mental impairments:

### I)    *Evidence of Physical Impairments*

Plaintiff presented to doctors at MidMichigan Medical Center—Midland ("MidMichigan") on May 25, 2006, with numerous physical complaints, including: increased blood sugars, positive bilateral leg pain, and problems with depression (Tr. 218). Doctors treated Plaintiff for hyperosmolar hyperglycemia, hyperlipidemia, and restarted her treatment for neuropathy (Tr. 219).

Dr. Surendra Kaul conducted a motor and sensory nerve study on Plaintiff on January 23, 2008 (Tr. 215). The study noted that Plaintiff had a history of pain numbness and severe pain in her feet, and Dr. Kaul opined that Plaintiff had advanced peripheral neuropathy, most likely secondary

to diabetes mellitus (Tr. 215-216).  He prescribed Trileptal and Mexelitine to alleviate Plaintiff's pain since her current medication was not effective in that regard (Tr. 216).

On February 6, 2008, Dr. Jeffrey C. Stone diagnosed Plaintiff as having diabetes with peripheral neuropathy and mild tarsal tunnel (Tr. 220 and 512).  Plaintiff alleged that multiple medications had failed her and Dr. Stone placed her on an alternative treatment plan to address this complaint (Tr. 512).  On a subsequent follow-up to MidMichigan Diabetes Center on May 7, 2008, Plaintiff was diagnosed as having diabetes, peripheral neuropathy, some compression neuropathy in the tarsal tunnel, and distal peripheral arterial disease (Tr. 511).

On November 25, 2008, Plaintiff was admitted to the Emergency Care Center at Covenant Healthcare with complaints of a headache and back pain (Tr. 494).  Dr. Andrew Bazakis, the attending physician, opined that Plaintiff had experienced a head injury, contusion, and suffers from uncontrolled diabetes mellitus (Tr. 496).

Plaintiff was admitted to Covenant Healthcare again, on April 27, 2009, after complaining of chest pains that she alleges were induced by mental stress (Tr. 596).  A diabetes management consultation with Dr. Arafeh Abdullah noted that Plaintiff had not taken her insulin for a couple of days leading up to her hospital visit for reasons unknown to him (Tr. 601).  Dr. Abdullah recommended that Plaintiff resume her insulin regimen (Tr. 602).

Several months later, on November 2, 2009, Plaintiff was again admitted to Covenant Healthcare with similar complaints of chest pains (Tr. 476).  Attending physician Dr. Glenn Cipullo opined that Plaintiff had supraventricular tachycardia and hyperglycemia (Tr. 477).

Regarding Plaintiff's problems with balance and disequilibrium, between May 30, 2006 and February 5, 2008, Dr. Kenneth MacKinnon examined her gait and noted on several occasions that it was normal (Tr. 405, 407, 416, 418, 420, 424, 555, 563, 579, and 584).  Similarly, Dr. MacKinnon

indicated that Plaintiff had no instability, dislocation or laxity during this period (Tr. 407, 416, 418, 420, 555, and 563). The records, however, did show that Plaintiff had an abnormal gait on August 30, 2006 and a positive Romberg result on February 5, 2008 (Tr. 405 and 428).

The medical records from Plaintiff's primary care physicians noted her complaint of foot pain. Between July 20, 2006 and December 18, 2006, Plaintiff presented to her physicians complaints of pain in her ankle and heel (Tr. 428, 429, 430, and 431). There were also two references (on December 9, 2009 and on January 12, 2010) in Plaintiff's medical records in which her physician noted that she "ambulates [with] a cane;" however, the physician did not provide any further explanation or description as to Plaintiff's need for a cane (Tr. 642 and 644). Dr. Koneru, Plaintiff's psychiatrist, also noted on November 14, 2009 that Plaintiff "walked with a cane," but likewise did not address her need for this device (Tr. 622).

### ii) *Evidence of Mental Impairments*

Plaintiff has undergone substantial and consistent mental health counseling and treatment since November 2006. Between November 22, 2006 and December 1, 2006, Community Mental Health for Central Michigan ("Community Mental Health") performed a detailed psychosocial assessment of Plaintiff and noted (among other things) that Plaintiff acknowledged problems with falling asleep, staying asleep, and difficulty with concentration (Tr. 212). Plaintiff was noted as taking the drug Xanax to treat her anxiety problems (Tr. 211).

A psychiatric evaluation of Plaintiff by Community Mental Health on January 19, 2007 determined that Plaintiff had major depression (recurrent, moderately severe, non-psychotic) and panic disorder with agoraphobia (Tr. 189). This evaluation further noted Plaintiff's claims that she sleeps better in the morning than at night and that she gets about four or five hours of sleep in 24 hours (Tr. 188). Plaintiff complained of having problems with her memory and concentration (Tr.

188).   The evaluation outlined Plaintiff's long history of anti-depression treatment, including prescriptions for Zoloft, Effexor, Paxil, Wellbutrin, and Cymbalta, as well as Lunesta for insomnia (Tr. 188-189).   Plaintiff explained that she did not find these medications helpful and stated that "they did not do much for me" (Tr. 188-189).   She was encouraged to continue taking Cymbalta to help manage symptoms related to her depression (Tr. 190).

Over a period of 18 months, Plaintiff was treated by Dr. Munawar Ahmad at Community Mental Health for symptoms stemming from major depression and agoraphobia.   On February 23, 2007, Plaintiff complained of being under a lot of stress, experiencing considerable anxiety, and erratic sleeping patterns (Tr. 250).   On April 3, 2007, Plaintiff reported feeling depressed, crying a lot and having trouble sleeping at nights, to which Dr. Ahmad recommended treating Plaintiff with Pamelor for her depression and panic attacks (Tr. 249).

Five weeks later, on May 11, 2007, Plaintiff told Dr. Ahmad that the Pamelor helped her depression and that she was feeling better but that she could benefit from a higher dose of Seroquel; Dr. Ahmad increased her dosage (Tr. 248).   On July 27, 2007, Plaintiff reported to Dr. Ahmad that she was experiencing more feelings of depression and increased anxiety after being off the medication for a couple of weeks, and in response, he started her on Pamelor and Seroquel again (Tr. 247).

On September 13, 2007, Dr. Ahmad noted that Plaintiff had missed her last appointment and that she ran out of Pamelor earlier than his records indicated (Tr. 246).   Plaintiff complained of experiencing irritability, anxiety, and panic attacks when she was no longer taking Pamelor, and Dr. Ahmad renewed her prescription for both Pamelor and Seroquel (Tr. 246).

Plaintiff underwent an annual psychosocial assessment at Community Mental Heath on November 27, 2007 and December 14, 2007 (Tr. 191).   The assessment noted that Plaintiff was

experiencing difficulty with concentration and falling asleep (Tr. 193). Dr. Ahmad noted in his physician's progress note on February 26, 2008 that Plaintiff had not been taking her medications as prescribed to help manage her depression (Tr. 245). During Plaintiff's last visit with Dr. Ahmad (based on the available medical records) on June 5, 2008, she complained about continuous anxiety and panic attacks (Tr. 519). Westlund Guidance Clinic conducted a psychiatric evaluation on November 14, 2009, which reiterated that Plaintiff suffers from depression but also indicated that her memory was fair in all areas (Tr. 622).

Plaintiff also visited Dr. Kenneth MacKinnon's office between 2006 and 2008, and the record is consistent with the above psychiatric assessments and treatment of depression and anxiety (Tr. 418, 420, 436, 563,582, and 584). Dr. MacKinnon also noted that Plaintiff suffered from poor concentration or memory (Tr. 436 and 584.). However, the record is inconclusive in this area, because Dr. MacKinnon also noted that Plaintiff had normal memory or no anxiety on several other occasions (Tr. 407, 416, 418, 420, 424, 555, 563, 583, and 585).

### 3.    Vocational Expert

The ALJ asked the vocational expert (VE) a hypothetical question regarding the existence of unskilled entry level jobs for a person of Plaintiff's age, education, and past relevant work experience, who could perform work that does not require exertion above the sedentary level or more than frequent grasping (Tr. 51). The VE testified that such a person could perform work as an inspector, office clerk, or surveillance system monitor, with a total of 67,000 jobs in the national economy (Tr. 51-52). After considering additional factors accounting for the Plaintiff's limitations, the VE reduced the number of available jobs in the national economy to 44,500 (Tr. 52-53).

### C.      Plaintiff's Claims of Error

Plaintiff raises two main arguments on appeal.  First, Plaintiff argues that the hypothetical and the RFC did not accurately portray Plaintiff's diabetic neuropathy and need to ambulate with a cane.  Second, Plaintiff argues that the RFC and the resulting hypothetical failed to accommodate her "moderate" restriction in maintaining concentration, persistence or pace (Pl.'s Br. at 3-12).

## III.    DISCUSSION

### A.      *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *See Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *See Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner*

- 9 -

*v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

- 10 -

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.   Governing Law

The "[c]laimant bears the burden of proving her entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be
> expected to result in death or which has lasted or can be expected to
> last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful
> activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or
> combination of impairments, that "significantly limits...physical or
> mental ability to do basic work activities," benefits are denied
> without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful
> activity, has a severe impairment that is expected to last for at least
> twelve months, and the severe impairment meets or equals one of the
> impairments listed in the regulations, the claimant is conclusively
> presumed to be disabled regardless of age, education or work
> experience.
>
> Step Four: If the claimant is able to perform his or her past relevant
> work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that the
> claimant can perform, in view of his or her age, education, and work
> experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§

404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at

any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of

limitations caused by his impairments and the fact that she is precluded from performing her past

relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [her] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### a.  Analysis and Conclusions

As noted above, Plaintiff raises two arguments on appeal (Pl.'s Br. at 3-12).  The first issue is whether the hypothetical and RFC accurately portrayed Plaintiff's diabetic neuropathy and need to ambulate with a cane (Pl.'s Br. at 3-9).  Specifically, Plaintiff asserts that "[t]here is nothing contained within the RFC or hypothetical to the vocational expert that addresses [Plaintiff's] problems with balance or disequilibrium" (Pl.'s Br. at 5).

Generally, in determining whether or not the testimony of a vocational expert establishes a claimant's ability to perform a significant number of other jobs, the ALJ should consider the entire record including the following factors: (1) the level of the claimant's disability; (2) the reliability of the vocational expert's testimony; (3) the reliability of the claimant's testimony; (4) the distance the claimant is capable of traveling to engage in assigned work; (5) the isolated nature of the identified jobs; and (6) the types and availability of such work.  See *Hall v. Brown*, 837 F.2d 272, 275 (6th Cir. 1988).  The ALJ then has the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of the claimant's residual functional capacity.  See 20 C.F.R. § 416.920(a)(4)(iv).

A vocational expert, on the other hand, is not expected to evaluate a claimant's medical condition in making a determination as to whether the claimant can perform recommended jobs in

- 13 -

the national economy.  *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).  In fact, any evaluation of medical evidence performed by a vocational expert would be outside their area of expertise.  *Webb*, 368 F.3d 629, 633 (6th Cir. 2004).  In *Webb*, the court concluded that the "vocational expert's testimony is directed solely to whether, given a claimant's age, experience, and education, along with the ALJ's assessment of what [the claimant] 'can and cannot do,' there exist a significant number of employment opportunities for [the claimant] in the regional and national economies."  *Webb*, 368 F.3d 629, 633 (6th Cir. 2004).

In evaluating the extent to which a hypothetical posed to a vocational expert should list the claimant's medical condition and be considered by the vocational expert when determining the claimant's ability to work in the national economy, this circuit has held that such a medical list is not required.  *Webb*, 368 F.3d 629, 633 (6th Cir. 2004).  In an analogous case before this court, the claimant alleged that the ALJ "…made no mention of [Plaintiff's] chronic pain in her knees…[and] the use of a cane…" in the hypothetical question posed to the vocational expert. *Jackson v. Comm'r of Soc. Sec.*, 2009 WL 612343, at *12 (E.D. Mich., March 6, 2009).  The court addressed this issue by reiterating the holding in *Webb* and said, "contrary to what Plaintiff suggests, the ALJ is not required to list her impairments in a hypothetical question to the VE…[and] so long as [the] ALJ…accounted for Plaintiff's limitations in his hypothetical question to the VE, he was not required to list her medical conditions."  *Id*.

In the present case, the ALJ did not list Plaintiff's impairments in the following hypothetical posed to the vocational expert:

> ALJ:    Let me begin by asking you to identify for an individual of the Claimant's age and education and work history who is able to perform work that does not require exertion above the sedentary level or more than frequent gasping.  Would there be any unskilled entry

- 14 -

> level occupations that this person could perform, and if so would you
> tell us what they are?  (Tr. 51)

> VE:   Yes, there would be some.  There would be a -- I'm looking in the
> national economy.  There would be a reduced range of inspector
> positions.   These most particularly are visual inspection type
> positions.  There would be about 10,000 of these jobs…There would
> be a reduced range of office clerk positions and reducing this number
> down to 35,000 jobs…There would be work such as a surveillance
> system monitor.  Number of 22,000 jobs.  (Tr. 51-52)

However, based on *Jackson*, the issue is not whether the ALJ listed Plaintiff's impairments in the

hypothetical question, but rather, whether the question accounted for Plaintiff's limitations.

*Jackson*, 2009 WL 612343, at *12 (E.D. Mich. March 6, 2009).  During the hearing, the ALJ asked

the vocational expert the following additional questions which, in the undersigned's opinion,

accounted for Plaintiff's medical limitations:

> ALJ:   Would any of these occupations that you've cited give the worker the
> freedom to alternate sitting and standing at will?...If I added the
> qualification that these – that this person was limited to simple
> routine repetitive tasks with one or two-step instructions, would the
> occupations you've cited still qualify?...To do these jobs is it
> necessary for the worker other than the office clerk to have more than
> occasional contact with coworkers, supervisors, or the public?..Just
> one thing. According to the DOT the office clerk requires no more
> than occasional use in these areas. (Tr. 52-54)

It is clear from the above questions that the vocational expert was expected to consider Plaintiff's

medical limitations in determining the availability of jobs in the national economy that Plaintiff

could reasonably be expected to perform.  Thus, although the hypothetical did not specifically list

Plaintiff's medical conditions of diabetic neuropathy nor mention any related problems with balance

or disequilibrium, the hypothetical adequately accounted for Plaintiff's limitations (i.e. the freedom

to alternate sitting and standing, simple routine tasks, and occasional contact with co-workers,

supervisors or the public), which renders the hypothetical and the vocational expert's response accurate.

The ALJ recognized that Plaintiff suffers from diabetic peripheral neuropathy. The primary issue is whether this impairment, particularly as it relates to Plaintiff's balance or disequilibrium and the need for a cane, is substantiated by the record and should have been given greater consideration in the RFC and the ALJ's hypothetical question to the vocational expert. The ALJ is not required to include a Plaintiff's claim of a medical condition if the claim is not substantiated by the record. *See Jackson*, 2009 WL 612343, at *12 (E.D. Mich. March 6, 2009);  *see also Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118 (6th Cir. 1994).

As noted above, the record regarding balance or disequilibrium is inconclusive given that Dr. MacKinnon noted that Plaintiff had a normal gait and no instability, dislocation or laxity between May 2006 and February 2008. Additionally, Plaintiff did not raise the issue of balance or disequilibrium during her many hospital visits—her chief complaints were primarily related to chest pains or other medical symptoms.

Further, Dr. Robert Nelson conducted an RFC assessment of Plaintiff on May 12, 2008 and explained that his assessment was based upon evidence showing that Plaintiff has diabetes mellitus II, and peripheral neuropathy with some unsteadiness (Tr. 456-464). He opined, among other things, that Plaintiff can: (1) stand and/or walk (with normal breaks) for a total of at least 2 hours in an 8-hour workday; and (2) sit (with normal breaks) for a total of about 6 hours in an 8-hour workday (Tr. 457). Dr. Nelson further noted that Plaintiff had a normal gait (as of 2/5/08) and a positive Romberg test (Tr. 464). Although the RFC does not need to enumerate Plaintiff's maladies, Plaintiff's argument that her diabetic neuropathy and related problems of balance or disequilibrium were not factored into the RFC is simply not substantiated by the record.

- 16 -

Furthermore, there is a dearth of medical evidence to substantiate Plaintiff's need to ambulate with a cane.  Plaintiff cites *Parker v. Commissioner*, 597 F.3d 920, 922 (7th Cir. 2010) in her motion to remand, asserting that the "use of a cane does not require a prescription" and that the "EMG findings and examination by the neurologist on January [2]3, 2008, together with [Plaintiff's] testimony, provide the medial documentation that a cane is medically required under SSR 96-9p" (Pl.'s Br. at 8-9).  Plaintiff is correct in that a prescription for a cane is not required. *See Staples v. Comm'r of Soc. Sec.*, 329 Fed.Appx. 189, 191 (10th Cir. 2009).  However, Plaintiff incorrectly concludes that the medical documentation demonstrates that a cane is medically required. According to SSR 96-9p:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).  The adjudicator must always consider the particular facts of a case.

SSR 96-9p makes clear that Plaintiff's medical documentation must establish the need for a cane and the circumstances for which it is needed; the record in the present case fails to meet this standard.  Plaintiff testified that she began using a cane in November 2009 after receiving a written prescription from a hospital because she had "been off balance, and…falling a lot" (Tr. 42-43). Plaintiff also stated that she uses the cane on a daily basis (Tr. 42).  Dr. Nelson also noted that the "MER and ADL's do not indicate need for held-held assistive device" (Tr. 457).

As mentioned above, there were three references in the medical records that noted Plaintiff's use of a cane.  In the first two instances, Plaintiff's physician observed that Plaintiff "ambulates [with] a cane" (Tr. 642 and 644).  In the third instance, Plaintiff's psychiatrist observed that she "walked with a cane" (Tr. 622).  These references to a cane were only peripherally noted in the

- 17 -

medical records as a mere visual observation by a physician of his patient and they cannot be construed as demonstrating Plaintiff's need for a cane.  Further, although the evidence regarding Plaintiff's peripheral neuropathy, pain in the feet, and a positive Romberg Test are well documented by a neurologist on January 23, 2008 and by other physicians, the record does not show a correlation between these findings and Plaintiff's need for a cane, nor do they describe the circumstances for which a cane is needed.  Thus, the medical documentation insufficiently explains Plaintiff's need for the cane and the circumstances for which it is needed.  In sum, Plaintiff's first argument on appeal is not well-taken, as the physical RFC found by the ALJ is supported by substantial evidence.

Plaintiff's second issue on appeal is that the RFC and hypothetical failed to accommodate Plaintiff's "moderate" rating in maintaining concentration, persistence or pace (Pl.'s Br. at 3-12).  Specifically, Plaintiff avers that the hypothetical, which factored in "simple, routine, repetitive tasks, with one or two step instructions," does not accommodate a claimant who is "moderately" impaired in the ability to maintain concentration, persistence, or pace and that the jobs noted by the vocational expert (surveillance system monitor, inspector, and office clerk) would be "substantially reduced if not eliminated" due to this rating (Pl.'s Br. at 10, 12).

Plaintiff relies on *Edwards v. Barnhardt*, 383 F.Supp. 2d 920, 930 (E.D. Mich. 2005) to support her argument.  *Edwards* held that "while finding that Plaintiff has a 'moderate limitation in her ability to concentrate, persist and keep pace,' the ALJ's limitations…to 'jobs entailing no more than simple, routine, unskilled work'…are not sufficient , and do not fully convey Plaintiff's limitations in concentration to the VE."  *Id.*  In the present case, Plaintiff notes that in "a hypothetical claimant may be unable to meet quotas, stay alert or work at a consistent pace, even at a simple, unskilled, routine job" (Pl.'s Br. at 11).  *Edwards*, however, is distinguishable from the present case since, here, substantial evidence supports the ALJ's findings that Plaintiff can perform

"simple, low-stress tasks specified in the RFC" despite a "moderate" CPP rating. Additionally, the consistent trend in this District is to not remand a case on the premise that a claimant with a "moderate" CPP rating cannot perform simple, unskilled, and routine jobs.[1]

Plaintiff complained of problems with her memory and concentration as noted in a psychiatric evaluation conducted on January 19, 2007 by her treating psychiatrist Dr. Ahmad (Tr. 188). A psychosocial assessment conducted at Community Mental Health between November 2007 and December 2007 also noted Plaintiff's complaints with concentration and memory (Tr. 193). Dr. MacKinnon also kept a record of Plaintiff's deficiencies in these areas during her regular office visits between 2006 and 2008 and noted on two occasions that Plaintiff suffers from poor concentration or memory (Tr. 436 and 584). However, during several other office visits, Dr. MacKinnon noted that Plaintiff showed normal memory and made no notations regarding Plaintiff's difficulties concentrating (Tr. 407, 416, 418, 420, 424, 555, 563, 583, and 585). Although Dr. Ahmad diagnosed Plaintiff with major depression and agoraphobia, the record does not connect these disorders with Plaintiff's difficulties with concentration and memory nor conclusively demonstrate that Plaintiff suffers from concentration or memory difficulties on a consistent or regular basis.

This inconsistent record is supported by Dr. Newhouse's clinical assessment of Plaintiff. Dr. Newhouse opined in the RFC that Plaintiff retains the ability to do simple tasks on a sustained basis despite suffering from "some depression and panic disorder with difficulty concentration and pace" (Tr. 454). The RFC further indicates that, although Plaintiff has a "moderate" ability to understand, remember, and carry out detailed instructions and a "moderate" ability to maintain attention and

---

[1] *See Taylor v. Comm'r of Soc. Sec.*, No. 10-12519, 2011 WL 2682682, at *8 (E.D. Mich. May 17, 2011); *Seach v. Comm'r of Soc. Sec.*, No. 10-11741, 2011 WL 1792666, at *8 (E.D. Mich. Apr. 6, 2011); *Sutherlin v. Comm'r of Soc. Sec.*, No. 10-10540, 2011 WL 500212, at *3 (E.D. Mich. Feb. 8, 2011); and *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010).

concentrate for extended periods, she nonetheless has the ability to carry out very short and simple instructions (Tr. 452).  Dr. Newhouse also found that Plaintiff has the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 453).

In analyzing the case law discussing concentration, persistence or pace, the undersigned agrees that a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in CPP because the difficulty of a task does not always equate with the difficulty of staying on task.  *See e.g., Green v. Comm'r of Soc. Sec.*, No. 08-11398, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009).  However, the undersigned finds that there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of "simple work" but excludes a specific limitation in CPP.  Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC.  *See Hess v. Comm'r of Soc. Sec.*, No. 07-13138, 2008 WL 2478325, at *7 (E.D. Mich. June 6, 2008).

Given Plaintiff's inconsistent record of difficulties with concentration, persistence or pace and the dearth of evidence supporting a conclusion that Plaintiff's "moderate" CPP rating would preclude her from performing all simple work, Plaintiff has failed to show that the ALJ's conclusions were somehow flawed.  In *Sutherlin v. Comm'r of Soc. Sec.,* No. 10-10540, 2011 WL 500212 (E.D. Mich. Feb. 8, 2011), this Court held that despite the [plaintiff's'] moderate difficulty in maintaining concentration, persistence, or pace, these limitations did not interfere with [the plaintiff's] ability to perform tasks that were simple in nature and (2) he retained the ability to perform 'one to two' step tasks on a sustained basis."  Likewise, a plaintiff's moderate mental limitations do not automatically prohibit that person from performing simple, unskilled work.  *See Lewicki v. Comm'r of Soc. Sec.*, No 09-11844, 2010 WL 3905375 (E.D. Mich. Sept. 30, 2010); *see*

- 20 -

*also Infantado v. Astrue*, 263 F. App'x 469, 477 (6th Cir. 2008) (substantial evidence supported the ALJ's decision where, although a psychiatrist found "moderate" limitations in claimant's ability to maintain attention and concentration for extended periods, the claimant was capable of performing simple tasks on a sustained basis.).

Thus, it is clear that this District does not automatically remand cases solely for the ALJ to include a "moderate" concentration, persistence, or pace limitation where a medical professional makes a finding that the claimant has "moderate" difficulties in CPP but ultimately concludes that the claimant can perform simple work. In sum, the ALJ did not err in concluding that Plaintiff is not disabled; the undersigned concludes substantial evidence supports the ALJ's decision.

## III.    RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address  each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon_____
Mark A. Randon
United States Magistrate Judge

Dated:  December 11, 2011

<u>CERTIFICATE OF SERVICE</u>

*I hereby certify that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 11, 2011.*

*s/Melody R. Miles_____*
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5542*

- 22 -